**SO ORDERED.**

**SIGNED August 26, 2013.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**

_____

```
            UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA
                  LAFAYETTE DIVISION

IN RE:

MICHAEL C. DUHON,

    Debtor                              CASE NO. 12-50465
-----------------------------------------------------------------
MELODY CHILDS,

    Plaintiff

VERSUS                                  ADVERSARY NO. 12-5057

MICHAEL C. DUHON,

    Defendant
-----------------------------------------------------------------
                     REASONS FOR DECISION
-----------------------------------------------------------------
```

The present matter is an adversary proceeding brought by Melody Childs against the debtor, Michael Duhon, seeking a declaration that an unpaid loan is nondischargeable under 11 U.S.C. § 523. The court took the case under advisement following a trial on the merits. After reviewing the trial record, the parties'

arguments, and the relevant authorities, the court rules as follows.

## JURISDICTION

The court has jurisdiction over the matters asserted in this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This matter is a core proceeding in which this court may enter a final order pursuant to 28 U.S.C. §157(b)(2)(I) and (J). The following Reasons for Decision shall constitute the court's findings of fact and conclusions of law.

## BACKGROUND

Childs met Duhon in 2007. According to Childs, the two ultimately fell in love and began discussing marriage in the fall of 2009. In or around October 2009, Childs agreed to loan Duhon $110,000 to fund his "day trading" activities in the stock market. According to Duhon, Ms. Childs had planned to use the money to purchase a house in Baton Rouge. Duhon explained that he advised Childs against investing in real estate given the state of the real estate market at the time and that she would be better served by allowing him to invest her money in the stock market.

Childs' testimony on the reasons for the loan differs from Duhon's account. Childs testified that she and Duhon had been discussing marriage and that the proceeds of his day trading would be used to purchase a home that the two would occupy after they

-2-

were married. Childs explained that Duhon told her that his assets consisted primarily of multiple rental properties, and that he lived on the rental income from these properties. Childs testified that she accompanied Duhon on several visits to his properties to collect rent. Because his money was tied up in real estate, Duhon needed cash from Childs to make his stock investments. Childs felt comfortable with the loan because of the parties' intimate relationship and marriage plans, and because she believed that Duhon would be able to repay the loan even if the investments were unsuccessful given his real estate holdings and rental income. Neither party disputed that the $110,000 was a loan and that Duhon was to repay the loan within three months regardless of the success of his investments. In order to secure the loan, Duhon provided Childs with a second mortgage on his home, named her as a beneficiary on a $150,000 life insurance policy, and wrote an undated check for $110,000 to secure payment of the debt. These terms were summarized on an informal, handwritten term sheet signed by both parties(See Childs Trial Exhibit ("Exh.") No. 3).

The parties' accounts also differ as to what happened after the loan was made. According to Childs, Duhon began to avoid her calls and messages, and he no longer talked about marriage. She testified that she began to worry not only about the state of their relationship but also about her loan to Duhon. Childs testified

that she began to investigate Duhon's real estate holdings and discovered that, while Duhon had owned rental properties at one point in the past, he no longer owned any rental properties. To the extent that Duhon collected rent from any properties, he was apparently collecting on behalf of the owners. After Childs confronted Duhon about the loan, Duhon made a payment to Childs totaling $25,000 in or around February 2010. This $25,000 was apparently the remaining balance of Duhon's stock trading account. Duhon made no further payments to Childs after that payment. When Childs received no additional payments, she attempted to cash the $110,000 check in or around March 16, 2010. The check was dishonored twice on the grounds that there were insufficient funds in Duhon's account. According to Childs, Duhon continued to avoid communicating with her. Childs then sent Duhon a certified demand letter in April 2010 and, when he did not respond or make any additional payments on the loan, Childs filed a petition in state court on May 25, 2010, asserting a "bad check" claim under La. R.S. 9:2782. The state court ultimately entered judgment in favor of Childs for double her damages under La. R.S. 9:2782 – $220,000 – and attorneys' fees of $15,000, with a credit of $25,000 for the payment made by Duhon in February 2010.

According to Duhon, Childs knew the risks of day trading in the stock market but nevertheless began to harass him about the

-4-

status of her money shortly after the loan was made. When Childs demanded that the loan be paid after the agreed upon 3-month term, Duhon explained to her that he needed additional time to realize a gain on his investments and that if he was forced to liquidate his stock portfolio to repay her loan at that time, he would suffer significant losses. Duhon ultimately liquidated his portfolio when Childs insisted that the loan be repaid. Duhon testified that he suffered losses on his investments when he liquidated his portfolio. With respect to his real estate holdings, Duhon contends that he never made any representation to Childs that he owned real estate or that he received any income from rental properties. With respect to the $110,000 check that was dishonored, Childs contends that the check was prepared on or shortly after the loan was made in October 2009 solely to provide additional security to Childs should something happen to Duhon. According to Duhon, the undated check was placed in a clock by his bedside for safekeeping in the event something should happen to him. He explained that Childs knew that his bank account did not contain sufficient funds to honor that check unless money was moved from Duhon's stock trading account into that bank account. Duhon explained that Childs had the account information necessary to move funds from the brokerage account to Duhon's bank account should something happen to him. Duhon testified that he has no idea how

-5-

Childs obtained possession of the check and that Childs filled in the date and cashed the check without his permission.

Duhon filed for relief under Chapter 7 of the Bankruptcy Code on April 20, 2012. Childs then filed the instant adversary proceeding seeking a declaration that the state court judgment in her favor is nondischargeable under 11 U.S.C. § 523.

**DISCUSSION**

**A. Nondischargeability Under 11 U.S.C. § 523(a)(2)(A)- Fraud.**

Although the Complaint refers generally to dischargeability under 11 U.S.C. § 523 and does not assert a claim under any specific provision of section 523, Childs' arguments and the evidence at trial point to fraud claim under section 523(a)(2)(A). Section 523(a)(2)(A) provides that "money, property, services, or an extension, renewal, or refinancing of credit" that is obtained through "false pretenses, a false representation, or actual fraud" is subject to exception from a debtor's discharge. 11 U.S.C. § 523(a)(2)(A). In order for a debt to fall within section 523(a)(2)(A), the debtor's fraud or false representation must involve the debtor's "moral turpitude or intentional wrong." Vizzini v. Vizzini ( In re Vizzini), 348 B.R. 339, 343 (Bankr. E.D. La. 2005), aff'd, 234 Fed. Appx. 234 (5th Cir. 2007) (quoting In re Chavez, 140 B.R. 413, 419 (Bankr. W.D. Tex. 1992)). The Fifth Circuit has "distinguished between actual fraud on the one hand and

-6-

12-05057 - #39   File 08/26/13   Enter 08/26/13 14:22:21   Main Document   Pg 6 of 15

false pretenses and misrepresentations on the other" in describing the elements required for a nondischargeability action under section 523(a)(2)(A). RecoverEdge L.P. v. Pentecost, 44 F. 3d 1284, 1292 (5th Cir. 1995); In re Holdaway, 388 B.R. 1767, 772 (Bankr. S.D. Tex. 2008). "False pretenses" under section 523(a)(2)(A) requires a "knowing and fraudulent falsehood that describes past or current facts and is relied upon by the other party." See RecoverEdge, 44 F. 3rd at 1292. To establish actual fraud, a plaintiff must prove that: (1) the debtor made false representations; (2) the debtor knew the representations were false at the time they were made; (3) the debtor made the representations with the intent to deceive the plaintiff; (4) the plaintiff relied on these misrepresentations; and (5) the plaintiff's injury was sustained as a proximate result of the representations made by the debtor. In re Bercier, 934 F.2d 689, 692 (5th Cir. 1991); RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir. 1995); Field v. Mans, 516 U.S. 59, 67-70 (1995) (fraud under section 523(a)(2)(A) requires proof of justifiable reliance).

A creditor has the burden of proof in an action to determine the dischargeability of a debt under section 523(a). Grogan v. Garner, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a

-7-

creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." <u>Hudson v. Raggio & Raggio, Inc. (In re Hudson)</u>, 107 F.3d 355, 356 (5th Cir. 1997). Accordingly, a creditor must establish each and every element of a statutory exception to discharge under 11 U.S.C. § 523 <u>et</u> <u>seq</u>. by a preponderance of the evidence. The elements of a nondischargeability claim are a matter of federal law.

**B. Application of Section 523(a)(2)(A) to the Evidence.**

Childs cites at least three grounds for a nondischargeability finding under section 523(a)(2)(A):

(1) Duhon's alleged misrepresentations about his real estate holdings and rental income;

(2) Duhon's use of funds in his stock trading account for personal expenses; and

(3) the dishonored $110,000 check and Childs' double damages award in state court.

### 1. Duhon's Representations About His Real Estate Holdings.

The court concludes that the trial record supports a section 523(a)(2)(A) finding based on representations made by Duhon to Childs about his real estate holdings and rental. Although Duhon disputes that he made any such representations, the court finds Childs' testimony in this regard more credible. Childs' testimony

-8-

specifically describes instances when she accompanied Duhon to collect rent from various rental properties. Childs' account is consistent with her testimony that she made a $110,000 loan to Duhon because of his representations that his money was tied upon in his real estate holdings, and that he would be in a position to repay the loan from investment gains and the income that he received from those properties. Accordingly, the court finds that Duhon made these representations to Childs about his real estate holdings and that the representations were false. Childs testified that she relied on these representations when she made the loan to Duhon, and that she would not have lent him $110,000 had she known that he did not own any of the rental properties. The court further finds that Duhon knew that he no longer owned these rental properties at the time he made the misrepresentations to Childs. Specifically, at trial, Duhon testified that he lost ownership of those properties in connection with a prior bankruptcy over ten years ago. Finally, the court finds that Duhon acted with the requisite intent to defraud. Specifically, Duhon knew that the representations about his real estate holdings were false, and that he made these representations to induce Childs to make the loan. Specifically, Duhon convinced Childs that he needed her money because all of his assets were tied up in real estate. In sum, the court finds for Childs with respect to her section 523(a)(2)(A)

-9-

claim based on misrepresentation made by Duhon about his real estate holdings.

**2. Duhon's Use of Funds for Personal Expenses.**

Childs further asserts that Duhon misapplied funds from his stock trading account for personal expenses. Childs alleges that she made a loan to Duhon based on his representation that the loan would be used solely for investments that would ultimately finance the purchase of a house after Childs and Duhon were married. The trial record, however, shows that some funds from Duhon's stock trading account were withdrawn and used by Duhon for living expenses, including purchases at electronics stores. During his testimony, Duhon initially conceded that the $110,000 loan was solely for stock investments. When confronted with evidence that some funds were used for personal expenses, Duhon testified that, to the contrary, Childs did not really care whether some of the proceeds of her loan were used for other purposes and that he was entitled to use those funds at his discretion. Duhon's testimony in this regard is simply not credible.

A defendant's promise to perform in the future is generally not subject to a fraud claim if the defendant later fails to perform. See, e.g., In re Allison, 960 F.2d 481, 484 (5th Cir. 1992) ("[T]he misrepresentations be of past or current acts; a promise to perform acts in the future is not considered a qualifying

-10-

misrepresentation merely because the promise subsequently is breached."). On the other hand, a fraud claim may be based on a defendant's promise of future performance if he had no intent to perform at that time of entering into the agreement. Id. The relevant time frame for assessing fraudulent intent is the point when the defendant entered into the agreement.  However, courts will look at a defendant's course of conduct after entering into the agreement to support an inference that the defendant never intended to perform. See In re Barnette, 281 B.R. 869 (Bankr. W.D. Pa. 2002).  Here, Duhon's use of funds from his stock trading account for personal expenses occurred shortly after he received the $110,000 loan from Childs.  Moreover, Childs testified that Duhon began to limit his contact with her shortly after the loan was made, and often failed to return her calls.  Based on this record, the court finds that not only did Duhon breach his agreement with Childs that the loan proceeds would be used solely for stock investments, Childs has met her burden of proof that Duhon had no intention of honoring that agreement when he agreed to the terms of Childs' loan and that she would not have lent money to Duhon had she known that some of the funds would be used for personal expenses.  Accordingly, the court finds that Duhon's use of proceeds from Childs' loan for personal expenses provides an additional ground for nondischargeability under section

-11-

523(a)(2)(A).

### 3. The $110,000 Check and State Court Judgment.

Finally, Childs relies on the dishonored check and her state court double damages judgment to support a nondischargeability finding. Specifically, Childs' state court petition included a claim under La. R.S. 9:2782, which governs damages for dishonored checks. This provision provides for "damages of twice the amount so owing" in addition to attorney fees and court costs. Pursuant to this provision, Childs obtained a judgment totaling $220,000 in addition to interest and reasonable attorney fees in the amount of $15,000. Childs contends that this judgment is res judicata in the present proceeding. Childs is correct in the sense that a prior state court judgment is res judicata in a subsequent dischargeability proceeding "as to the existence and amount of the debtor's obligation to the particular creditor." <u>Sosebee v. Steadfast Insurance Company</u>, 701 F.3d 1012, 1026 (5th Cir. 2012). However, a state court judgment **is not** res judicata as to the elements of a nondischargeability claim. <u>Id</u>. (citing, <u>Brown v. Felsen</u>, 442 U.S. 127 (1979)). Specific findings of fact made by the state court that bear on the bankruptcy court's nondischargeability finding may be entitled to collateral estoppel effect. Collateral estoppel, for the purposes of nondischargeability, applies in bankruptcy court only if "the

-12-

first court has made specific, subordinate, factual findings on the identical dischargeability issue in question – that is, an issue which encompasses the same prima facie elements as the bankruptcy issue – and the facts supporting the court's findings are discernable from the court's record." In re Dennis, 25 F.3d 274, 278 (5th Cir. 1994).

The court concludes that the record does not support an independent nondischargeability claim under 11 U.S.C. § 523(a)(2)(A) with respect to Childs' bad check claim under La. R.S. 9:2782. Duhon's testimony that he wrote an undated check around the time the loan was made is consistent with Childs Trial Exhibit No. 3, which specifically references the check. Moreover, the testimony of both parties shows that the check was intended as additional security should something happen to Duhon. The record also supports Duhon's testimony that the check was not intended to be cashed and that both parties knew that Duhon's account did not have sufficient funds to honor the check when it was written. Specifically, Childs testified that the reason for the loan was that Duhon did not have the cash to fund his investment activities because his assets were tied up in real estate. Accordingly, the court finds that the record does not support a finding of fraudulent intent or a finding of justifiable reliance given that Childs knew that the check was not funded when written. Field v.

-13-

Mans, 516 U.S. 59, 67-70 (1995) (fraud under section 523(a)(2)(A) requires proof of justifiable reliance). Childs further points to La. R.S. 14:71(f)(2), which states that failure to pay a dishonored check after notice is presumptive evidence of the intent to defraud. This state law presumption, however, is not applicable to nondischargeability under section 523(a)(2)(A). Specifically, courts have held that a nondischargeability claim under this provision "requires a showing of actual or positive fraud, not merely fraud implied by law." Palmacci v. Umpierrez, 121 F.3d 781, 788 (1st Cir. 1997) (citing In re Anastas, 94 F.3d 1280, 1286 (9th Cir. 1996)).[1] In sum, Childs cannot support a nondischargeability claim under section 523(a)(2)(A) based on her bad check claim under La. R.S. 9:2782 and her double damages award.

**C. Amount of Debt Subject to Nondischargeability Finding.**

The next question for the court is the amount of Childs' claim that is entitled to a nondischargeability finding under section 523(a)(2)(A). Childs' total claim includes the unpaid portion of her $110,000 loan as well as the additional damages and attorneys' fees awarded by the state court. However, as explained above, not all of this claim is subject to a nondischargeability finding. The

---

[1] Section 523(a)(2)(C) creates a presumption of nondischargeability that arises under certain circumstances, none of which are applicable here.

12-05057 - #39  File 08/26/13  Enter 08/26/13 14:22:21  Main Document  Pg 14 of 15

court concludes that $85,000 of Childs' total claim is nondischargeable under 523(a)(2)(A). This reflects the original loan amount of $110,000 reduced by the $25,000 payment made by Duhon before Childs attempted to cash the check. Moreover, any interest accrued on that loan pre-petition is nondischargeable. With respect to the $15,000 of attorney fees awarded by the state court, that amount is dischargeable because it appears to have been awarded under La. R.S. 9:2782 with respect to Childs' bad check claim. As the court previously held, this claim is not subject to a nondischargeability finding under section 523(a)(2)(A).

## CONCLUSION

For the foregoing reasons, the court finds in favor of Childs on her nondischargeability claim under section 523(a)(2)(A). The court enters judgment based on the loan and the state court judgment for a total of $220,000 in damages, $15,000 in attorney fees, and judicial interest from the date of judicial demand. Of this amount, $85,000 and pre-petition interest on that amount is nondischargeable under section 523(a)(2)(A). Childs shall prepare and submit a judgment that reflects the court's ruling herein.

###